# United States District Court

| | | |
|---|---|---|
| ANDRA GROUP, LP, | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-00815 |
| | § | Judge Mazzant |
| BAREWEB, INC. | § | |
| d/b/a BARE NECESSITIES, | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant BareWeb, Inc.'s ("BareWeb") 12(b)(2), 12(b)(3), and 12(b)(6) Motions to Dismiss and in the Alternative Motion to Transfer Venue Pursuant to 28 U.S.C. § 1406 (Dkt. #23). After reviewing the relevant pleadings, the Court finds that these motions should be denied.

## BACKGROUND

This case concerns alleged copyright and trademark infringement. Plaintiff Andra Group, LP, ("Andra") operates HerRoom.Com ("HerRoom")—an interactive, online lingerie store. Andra owns several registered trademarks, utility patents, and copyrights associated with HerRoom (Dkt. #13). HerRoom aspires to ensure a convenient and comprehensive consumer experience by offering a wide selection of products and sizes along with real-time, fashion advice to the consumer. One source of such advice is an online application called Tomima's Tip. Named for Tomima Edmark, the creative force behind HerRoom, the Tomima's Tip window appears to a HerRoom customer, offering brief advice about garments of interest paired with a graphical depiction of a smiling Tomima.

Andra governs the use of HerRoom through a Terms of Use Agreement (the "TOU Agreement"). The TOU Agreement is a browsewrap agreement and a link to it appears on the footer of the homepage of HerRoom (Dkt. #30 at p. 13). The TOU Agreement dictates that

(1) using HerRoom binds a party under the TOU Agreement, (2) Andra owns, controls, and may license HerRoom's content, (3) HerRoom and its content are designed only for personal, rather than commercial use, (4) HerRoom users are prohibited from reproducing, publishing, transmitting, distributing, displaying, modifying, selling, exploiting, or creating derivative works from HerRoom or its content, (5) Andra's trade dress protects HerRoom's design and layout and no one may copy or imitate HerRoom's design and layout in whole or in part, (6) United States copyright laws protect HerRoom's content and users are forbidden from copying or using its content for any commercial purpose, (7) HerRoom's users must "defend, indemnify, and hold [Andra] harmless" due to their use of HerRoom and/or their breach of the TOU Agreement, (8) "[a]ny dispute arising under the [TOU Agreement] shall be resolved exclusively by the state and/or federal courts of the State of Texas[1]." (Dkt. #13 at p. 5). Andra alleges that BareWeb's employees visited HerRoom and, in doing so, agreed to the TOU Agreement.

BareWeb—a rival, online, lingerie retailer—introduced an application known as the amBRAssador Tip. (Dkt. #13 at p. 2). While a customer is shopping on BareWeb's website, the amBRAssador Tip appears in a window, offering advice on products of interest accompanied by a photograph of a friendly, female face. Andra alleges that the amBRAssador Tip copied Tomima's Tip and threatens "to cause confusion, to cause mistake, and/or to deceive customers and potential customers of the parties, at least as to some affiliation, connection, or association of [BareWeb] with [Andra], or as to the origin, sponsorship, or approval of [BareWeb's] services by [Andra]." (Dkt. #13 at p. 7).

On February 20, 2017, Andra filed its First Amended Complaint against BareWeb, alleging (1) breach of contract, (2) Lanham Act trade dress infringement, (3) common law trade dress

---

[1] Andra refers to this language as the "forum-selection clause" and the Court does the same throughout this Order.

infringement, (4) copyright infringement, and (5) Lanham Act unfair competition (Dkt. #13). On March 14, 2018, BareWeb filed its 12(b)(2), 12(b)(3), and 12(b)(6) Motions to Dismiss Plaintiff's First Amended Complaint and, in the Alternative, Motion to Transfer Venue Pursuant to 28 U.S.C. § 1406 (Dkt. #23). On March 30, 2018, Andra filed its response (Dkt. #30). On April 9, 2018, BareWeb filed its reply (Dkt. #33). On April 17, 2018, Andra filed its sur-reply (Dkt. #34).

## LEGAL STANDARD

### Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)).

To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a prima facie case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)). However, if a court holds an

evidentiary hearing, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* And second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution.

The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts with a forum state can be satisfied by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (quoting

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1992) (citation omitted). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 609 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. For the court to exercise specific jurisdiction, the court must determine "(1) whether the defendant has . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Defendants who "'reach out beyond one state' and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions." *Burger King Corp.*, 471 U.S. at 475 (citing *Travelers Health*

*Assoc. v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum state requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id*.

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

### Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party the ability to move the Court to dismiss an action for "improper venue." Once a defendant raises improper venue by motion, "the burden of sustaining venue will be on Plaintiff." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-CV-699, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008) (citations omitted). "Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations omitted). The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Global Holdings, Inc.*, No. 6:16-CV-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the Court may look beyond the complaint to evidence submitted by the parties." *Ambraco*, 570 F.3d at 238. If

venue is improper, the Court must dismiss it, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

**Rule 12(b)(6)**

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in a plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

### I. Andra Pleads Sufficient Facts for the Court to Exercise Personal Jurisdiction over BareWeb

BareWeb argues that the Court lacks personal jurisdiction over it due to a lack of contacts with Texas. Andra counters that the Court has personal jurisdiction over BareWeb due to the TOU Agreement's forum-selection clause. Additionally, Andra contends that the Court may exercise personal jurisdiction over BareWeb since it "intentionally copied" information from Andra's servers in Texas to "create infringing trade dress and material that infringes [Andra's] copyrights, which it used in competition with [Andra] in this [d]istrict." (Dkt. #30 at p. 22).

The Fifth Circuit, and this district, have followed the test outlined in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *See Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002); *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006).

Under the *Zippo* sliding-scale test, a passive website, which only allows the owner of the website to post information, is not sufficient to establish personal jurisdiction. *AdvanceMe*, 450 F. Supp. 2d at 673 (citing *Revell*, 317 F.3d at 470). On the other end of the sliding scale is a website whose owners engage in repeated online contacts with forum residents through the site. *Id*. Such a website will likely meet the minimum contacts requirement. *Id*. Websites that fall in the middle of the sliding scale are "websites with some interactive elements and allow for bilateral information exchange." *Id*. When determining whether these websites have sufficient minimum contacts with the forum, the Court must "examine the interactivity and nature of the forum contacts." *Id*.

In its First Amended Complaint, Andra alleges that "[BareWeb] has sold product to consumers in this [d]istrict through its own interactive website. . . ." (Dkt. #13 at p. 8). None of the information in BareWeb's affidavits attached to its motion to dismiss contradicts this allegation, so the Court accepts it as true for purposes of Andra's establishing a prima facie case of personal jurisdiction over BareWeb. *Quintana*, 259 F. Supp. 2d at 557. Accordingly, Andra alleges that BareWeb "conducted business over the Internet by engaging in business transactions with forum residents or by entering into contracts over the Internet." *Mink v. AAAA Dev't LLC,* 190 F.3d 333, 337 (5th Cir. 1999).

The Court also finds that BareWeb's website is interactive. Along with the amBRAssador Tip application, the website offers customers the options to (1) contact BareWeb, (2) obtain shipping information, (3) sign-up for emails from BareWeb, (4) follow BareWeb's blog, (5) track their BareWeb orders, (6) create a BareWeb account, (7) contact experts on lingerie fitting, (8) receive advice on lingerie sizing and style, and (9) obtain advice on sports bras (Dkt. #30 at p. 13); *see Variant, Inc. v. Flexol Packaging Corp.*, No. 6:08-CV-478, 2009 WL 3082581, at *1 (E.D.

Tex. Sept. 21, 2009) (website considered interactive because it allowed users to enter contact information); *Red Hat, Inc. v. Bedrock Comp. Tech., LLC*, No. 6:09-CV-549 (E.D. Tex. March 2, 2011) (same). Accordingly, the Court finds that Andra adequately alleged facts to show that BareWeb's website offers sufficient customer service and support to qualify as interactive in nature. Thus, BareWeb's website satisfies both the high-end of the *Zippo* sliding scale by entering into business transactions with customers in this district—i.e. the sale of merchandise to customers from BareWeb's website—and the intermediate-level of the *Zippo* sliding scale by being a highly interactive website. *AdvanceMe*, 450 F. Supp. 2d at 673.

Now the Court will consider whether BareWeb has the requisite minimum contacts to be subject to specific personal jurisdiction in Texas. "[W]hen defendants perform additional acts to purposefully avail themselves of the forum state, such as advertising, conducting business transactions with residents of the forum state, and soliciting funds from residents in the forum state, there is sufficient support to find personal jurisdiction over the defendants." *Autobytel, Inc. v. Insweb Corp.*, No. 2:07-CV-524, 2009 WL 901482, at *2 (E.D. Tex. March 31, 2009) (citations omitted). Defendants have been found to have purposefully directed their activities to forum residents where forum residents use the allegedly infringing website in the forum. *See Variant*, 2009 WL 3082581 at *2; *AdvanceMe*, 450 F. Supp. 2d at 673. Also, defendants have been found to have purposefully directed their activities to forum residents when defendants generate income from forum residents. *See Variant*, 2009 WL 3082581 at *2; *Autobytel*, 2009 WL 901482 at *3; *see also uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 427–29 (7th Cir. 2010). Websites that offer customer service options to forum residents have also been considered to be purposefully directed at forum residents. *Autobytel*, 2009 WL 901482 at *3; *Seoul Semiconductor Co., Ltd. v. Nichia Corp.*, No. 2:07-CV-276, 2008 WL 4252444, at *1 (E.D. Tex. Sept. 10, 2008).

Andra claims that BareWeb sells its products to customers in this district through its allegedly infringing website that presumably generates income from this district's residents. Additionally, BareWeb offers services and support to customers in this district. Accordingly, the Court finds BareWeb has the requisite minimum contacts to be subject to specific personal jurisdiction in Texas.

**The Exercise of Personal Jurisdiction over BareWeb Does Not Offend Fair Play and Substantial Justice**

Since Andra has made a prima facie showing of minimum contacts, the Court must determine if personal jurisdiction would violate "fair play" and "substantial justice." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). BareWeb must make a "compelling case" against the exercise of personal jurisdiction. *Burger King Corp.*, 471 U.S. at 477. "The foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state, but rather is that the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled to court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980).

BareWeb avers that the burden of defending the case in this district, the lack of its allegedly infringing behavior in Texas, and the interstate judicial system's interest in "fair and constructive" litigation all weigh against personal jurisdiction (Dkt. #23 at pp. 34–35). Andra counters that BareWeb intentionally accessed Andra's servers in this district, copied its intellectual property from them, and produced infringing materials to compete directly with Andra in this district. Thus, Andra contends that the Court's exercise of personal jurisdiction is appropriate (Dkt. #30 at p. 23).

Andra has "a strong interest in securing convenient and effective relief." *See In re Norplant Contraceptive Prod. Liab. Litig.*, 886 F. Supp. 586, 591 (E.D. Tex. 1995). Moreover, BareWeb purposefully interjected itself into this forum by allegedly doing business in this district via an

interactive website and infringing on Andra's intellectual property. The State of Texas has a strong interest in protecting its companies from alleged copyright and trademark infringement. Finally, Texas will provide a convenient forum for the adjudication of this case. The burden of requiring BareWeb to litigate in Texas is no greater than the burden of requiring Andra to litigate in New Jersey. *Id.* As such, the exercise of jurisdiction over BareWeb by the Court would not offend traditional notions of fair play and substantial justice. Thus, the Court finds that it has personal jurisdiction over BareWeb.

## II.     Venue Lies in this District over BareWeb for Andra's Claims

BareWeb argues that the TOU Agreement does not establish venue. To that end, BareWeb again contends that the TOU Agreement is not enforceable and even if it were enforceable, Andra's claims are not covered by the TOU Agreement and enforcing the TOU Agreement's forum-selection clause would be unreasonable. Andra counters that venue lies in this district due to the forum-selection clause in the TOU Agreement. Moreover, Andra avers that venue is proper even without the TOU Agreement, as Copyright Act venue is coextensive with personal jurisdiction.

Pursuant to 28 U.S.C. § 1400(a), venue is proper for claims arising out of the Copyright Act and Lanham Act where a party "may be found." Courts have construed the language "may be found" as analogous to where a party is subject to personal jurisdiction.[2] *Time, Inc. v. Manning*,

---

[2] Such precedent does not offend the holding in *TC Heartland LLC v. Kraft Foods Group Brands LLC* or the reasoning behind it. There, the U.S. Supreme Court considered whether the Federal Circuit properly decided that Congress brushed aside *Fourco Glass Company v. Transmirra Products Corporation*, 353 U.S. 222, 223, 77 S. Ct. 787, 789, 1 L. Ed. 2d 786 (1957), by amending the general venue statute and defined "reside" as coextensive with personal jurisdiction. *See* 137 S. Ct. 1514, 1519–20, 197 L. Ed. 2d 816 (2017). The U.S. Supreme Court determined that its decision in *Fourco*, rejected that the general venue statute—1391(c)—defined the term "reside" in the patent venue provision of 1400(b). *Id.* at 1517. The U.S. Supreme Court then decided that if Congress wished to override *Fourco* and define "reside" in 1400(b) through its amendment of the 1391(c) venue provision, it would have explicitly expressed that intent when amending the 1391(c) venue provision. *Id.* at 1520–21. In turn, the U.S. Supreme Court struck down the definition of "reside" derived from the general venue language in 1391(c). *Id.*

366 F.2d 690, 697–98 (5th Cir. 1966)[3]; *see also Palmer v. Braun*, 376 F.3d 1254, 1259–60 (11th Cir. 2004); *Milwaukee Concrete Studios v. Fjeld Mfg. Co.*, 8 F.3d 441, 445–46 (7th Cir. 1993); *Stuart v. Fire-Dex, LLC*, No. CIV.A. H-13-675, 2013 WL 5852234, at *3 (S.D. Tex. Oct. 30, 2013) (citing *Palmer*, 376 F.3d at 1259; *Milwaukee Concrete Studios*, 8 F.3d at 445–47) ("Courts considering the meaning of 'may be found' in the Copyright Act's venue statute have consistently held that a defendant 'may be found' in any judicial district where it is subject to personal jurisdiction."); *Tayama v. Riom Corp.*, No. 2:11-CV-167-J, 2012 WL 556007, at *2 (N.D. Tex. Feb. 21, 2012) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1126 (9th Cir. 2010); *Palmer*, 376 F.3d at 1259; *Milwaukee Concrete Studios*, 8 F.3d 441) ("[T]here is wide agreement that a Defendant may be found in a district where personal jurisdiction over a Defendant could be maintained."); *Action Tapes, Inc. v. Weaver*, No. CIV. 3:05-CV 1693 H, 2005 WL 3199706, at *1 (N.D. Tex. Nov. 23, 2005) (citing *Palmer*, 376 F.3d at 1259–60) ("It has been widely held that the district in which a Lanham Act defendant may be 'found' is coextensive with a court's jurisdictional reach over the defendant's person."). BareWeb's internet commerce in this

---

28 U.S.C. § 1400(a), however, permits venue where a defendant "may be found," courts have consistently interpreted this language as coextensive with personal jurisdiction, and Andra does not rely on the venue definition in 1391(c) or any other statute to define "may be found." (Dkt. #30 at p. 23 n.82). Moreover, none of the case law in this order, supporting proper venue in this case under 1400(a), deploys reasoning similar, let alone analogous, to that which the U.S. Supreme Court struck down in *TC Heartland*—i.e. using the definition of the critical venue term from one statute to define the term in another statute. Rather, courts across the country have come to agree on the meaning of "may be found" through myriad rulings over several decades without relying on a separate, supplementary venue statute. *See Supra* "II. Venue Lies in this District over BareWeb for Andra's Claims." Thus, Andra's venue argument is distinct from the patent venue argument in *TC Heartland*.

[3] In *Time*, the Fifth Circuit explained that 1400(a) retained the "extensive venue" parameters that existed in the Judiciary Act of 1789. 366 F.2d at 697. Turning to *Stonite Products Company v. Melvin Lloyd Company*, 1942, 315 U.S. 561, 563, 62 S. Ct. 780, 86 L. Ed. 1026, the Fifth Circuit noted that "the original venue provisions of the Judiciary Act of 1789 permitted all civil actions to be brought where the defendant resided or was found." *Time*, 366 F.2d at 697. Meanwhile, in *Stonite*, the U.S. Supreme Court explained that the Judiciary Act of 1789 permitted venue "in the district of which [the defendant] was an inhabitant or in which he was found at the time of serving the writ." *Stonite*, 315 U.S. at 563. In turn, the Judiciary Act of 1789 permitted venue in a civil action, in part, where the defendant was subject to personal jurisdiction by service of process, rendering venue in this regard to be coextensive with personal jurisdiction. The Fifth Circuit explained that abuses of these "extensive venue" provisions compelled amendments of some venue rules but not of 1400(a). *Time*, 366 F.2d at 697.

district permits the Court's personal jurisdiction over it. Thus, venue is proper in this district for Andra's Copyright Act and Lanham Act claims—counts two, four, and five of the First Amended Complaint.[4]

Furthermore, pendent venue lies in this district for Andra's remaining breach of contract and common law trade dress infringement claims—counts one and three of the First Amended Complaint. A court may exercise pendent venue over a cause of action if it "arises out of a common nucleus of operative facts" from a plaintiff's other causes of action where venue is proper. *Merchants Fast Motors Lines, Inc. v. I.C.C.*, 5 F.3d 911, 921 (5th Cir. 1993). Andra alleges that its breach of contract claim arises from BareWeb's employees accessing HerRoom's website, entering the browsewrap TOU Agreement, and then violating the TOU Agreement by infringing on Andra's intellectual property with an application on BareWeb's website through which BareWeb does business in this district (Dkt. #13 at pp. 4, 7–8). Meanwhile, Andra's common law trade dress infringement claim arises from BareWeb allegedly doing business in this district with a website that infringes on Andra's intellectual property, specifically its trade dress (Dkt. #13 at pp. 8–9). Likewise, venue for Andra's Copyright Act and Lanham Act claims results from BareWeb allegedly doing business in this district via its website with an application that infringes on Andra's intellectual property. Accordingly, Andra's Copyright Act and Lanham Act claims, common law trade dress infringement, and breach of contract claim arise from a common nucleus of operative fact—BareWeb's website allegedly doing business in this district and infringing on Andra's intellectual property and, in the case of Andra's breach of contract claim, violating the

---

[4] Venue also lies in this district under the Forum-Selection Clause. BareWeb was bound by the browsewrap TOU Agreement since its employees allegedly visited HerRoom's website, BareWeb uses a similar browsewrap agreement on its own website, and Andra's claims are covered by the TOU Agreement (Dkt. #13 at pp. 4–5, 9–10; Dkt. #30 at pp. 12–13). *DHI Grp. v. Kent*, No. CV H-16-1670, 2017 WL 4837730, at *2–*4 (S.D. Tex. Oct. 26, 2017) (holding that a company, whose employee visited another company's website that had a browsewrap agreement, did not need to explicitly assent to the terms of that browsewrap agreement to bind the employer since the employer had constructive notice of the browsewrap agreement by using a similar browsewrap agreement).

TOU Agreement. *Id.* Consequently, pendent venue is appropriate for Andra's breach of contract and common law trade dress infringement claims.

### III.    Andra Sufficiently Pleaded a Basis for Relief Against BareWeb

BareWeb avers that Andra failed to state a claim for trade dress infringement and unfair competition under the Lanham Act. BareWeb also argues that Andra's First Amended Complaint does not plausibly demonstrate that the parties entered the TOU Agreement, precluding Andra's breach of contract claim. BareWeb advances that Andra's claim for contractual breach is preempted by its Copyright Act infringement claims. BareWeb admits that the First Amended Complaint satisfies the "Fifth Circuit's relaxed 'application' requirement to begin a copyright infringement action" but warns that the Fifth Circuit's application requirement opposes the Copyright Act's language and that this very issue is on petition to the U.S. Supreme Court (Dkt. #23 at p. 27). BareWeb asserts that Andra did not satisfy the originality prerequisite, and did not put BareWeb on notice of how it allegedly infringed upon its copyright in its pleadings. Andra argues that it sufficiently pleaded facts to make a claim for trade dress infringement and unfair competition under the Lanham Act as well as for copyright infringement. Andra further asserts that its breach of contract claim is not preempted since it includes an additional element to its copyright claims—a contractual promise.

#### A. Andra Properly Pleaded Its Claim for Infringement and Unfair Competition Under the Lanham Act

To prosecute a claim for infringement or unfair competition under the Lanham Act, a plaintiff must show two elements. First, the plaintiff must demonstrate that the trade dress qualifies for protection. *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117–18 (5th Cir. 1991). To qualify for legal protection, the trade dress must "(1) [be] inherently distinctive *or* (2) [have] acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana,*

*Inc.*, 505 U.S. 763, 769 (1992) (emphasis in original). Trade dress must be non-functional to receive legal protection. *Id.* at 775. Second, the plaintiff must demonstrate that the defendant's copying of its trade dress "creates a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship of the product at issue." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (quotations omitted).

The Court finds that Andra adequately pleaded its claims for trade dress infringement and unfair competition. First, Andra explained that Tomima's Tip was distinct because it "include[s] advice that discusses the features and fit of the product in the product details section of a product page and include[s] a tagline of the person giving the advice, a dialog box, and an image of the person giving advice." (Dkt. #13 at p. 1). Next, Andra offered a graphic of one of Tomima's Tips to show how its trade dress had a distinct appearance (Dkt. #13 at p. 2). Andra also alleged that the "particular arrangement of the trade dress components, and the overall visual impression created by those components, is not essential to use of [HerRoom]." (Dkt. #13 at p. 6). Accordingly, Andra alleged that Tomima's Tip was not functional. Next, Andra pleaded that BareWeb's copying of "[Andra's] Tips is likely to cause confusion, to cause mistake, and/or deceive customers and potential customers of the parties, at least as to some affiliation, connection, or association of [BareWeb] with [Andra], or as to the origin, sponsorship, or approval of [BareWeb's] services by [Andra]." (Dkt. #13 at p. 7). Andra also provided a side-by-side comparison of a graphic of one amBRAssador Tip with a graphic of one Tomima's Tip to show how the two were similar and could confuse a customer or potential customer (Dkt. #13 at p. 2). Viewing these facts in the First Amended Complaint in the light most favorable to Andra, the

Court finds that Andra pleaded plausible claims that it is entitled to relief for trade dress infringement under the Lanham Act. *See Bowlby*, 681 F.3d at 219.

**B. Andra Pleaded a Plausible Breach of Contract Claim Against BareWeb**

To plead a breach of contract claim, a plaintiff must allege: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). A complaint must offer enough facts to alert a defendant of its alleged wrongdoing. *See Twombly*, 550 U.S. at 555.

A website user assents to a browsewrap agreement by using the website that includes the browsewrap agreement and need not explicitly assent to the terms of the browsewrap agreement. *DHI Grp.*, 2017 WL 4837730, at *2–*4. In turn, the plaintiff need only show that "the user had actual or constructive knowledge of the terms and conditions to prove a valid contract exists between the user and the owner of the website." *Id* at *2 (citation omitted). Accordingly, the allegation that a website's user "knew or should have known about the browsewrap agreement because it uses a similar agreement on its own site are sufficient to state a plausible claim for relief." *Id.* at *4.

In its First Amended Complaint, Andra pleads that (1) BareWeb's employees accessed HerRoom and (2) BareWeb's website uses "terms of use similar to [Andra's] Terms of Use" and "publishes the link to its website terms of use on its home page, in a similar location to where [Andra] publishes a link to [Andra's TOU Agreement]." (Dkt. #13 at pp. 2–3, 6). Accordingly, Andra pleaded sufficient facts to show that the browsewrap TOU Agreement was a valid contract between Andra and BareWeb. Andra performed under the contract by permitting BareWeb's employees to access HerRoom. Andra pleaded that BareWeb violated the TOU Agreement by

infringing on Andra's intellectual property and that BareWeb's actions damaged Andra (Dkt. #13 at p. 9).  Thus, the Court finds that Andra pleaded a plausible claim for breach of contract.

### C.  Andra's Breach of Contract Claim Is Not Preempted by Its Copyright Act Claim

The Fifth Circuit deploys a two-part test to decide if a state law claim is preempted by the Copyright Act:

> First, the claim is examined to determine whether it falls "within the subject matter of copyright" as defined by 17 U.S.C. § 102. And second, "the cause of action is examined to determine if it protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106."

*Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 594 (5th Cir. 2015) (citations omitted).  A claim must meet both parts of the test to be preempted.  *Id.*  The Fifth Circuit analyzes equivalency through the "extra element" test.  *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003).  "This test requires that if 'one or more qualitatively different elements are required to constitute the state-created cause of action being asserted, then the right granted under state law does not lie within the general scope of copyright, and preemption does not occur.'"  *Id.* (citation omitted). The Fifth Circuit has held that "breach of contract claims are not preempted by the Copyright Act." *Real Estate Innovations, Inc. v. Houston Ass'n of Realtors, Inc.*, 422 F. App'x 344, 349 (5th Cir. 2011).  After all, an action for "breach of contract involves an element in addition to mere reproduction, distribution or display: the contract promise . . . therefore, it is not preempted." *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990).  As it involved the element of a contractual promise "in addition to mere reproduction, distribution or display . . .," the Court finds that Andra's breach of contract claim is not preempted by its claims under the Copyright Act.  *Id.*

### D. Andra Pleaded a Plausible Copyright Act Claim Against BareWeb

"An action for copyright infringement requires the plaintiff to show 'ownership' of the material and 'copying' of the material by the defendant." *Geoscan, Inc. of Tex. v. Geotrace Techs. Inc.*, 226 F.3d 387, 392–93 (5th Cir. 2000) (quoting *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991)). "To maintain a copyright infringement claim, the owner of the copyright must have registered it." *Id.* at 392. The Fifth Circuit has held that a copyright is registered "if an application, fee, and deposit have been submitted to the Copyright Office. . . ." *Id.* at 393. Meanwhile "[t]o establish 'ownership' of the material the plaintiff must show that the material is original, the material can be copyrighted, and compliance with all statutory formalities." *Id.*

A plaintiff may not recover statutory damages or attorney's fees under the Copyright Act if

> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after the first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

*Leland Med. Ctr., Inc. v. Weiss*, No. 4:07-CV-00067, 2007 WL 2900597, at *2 (E.D. Tex. Sept. 28, 2007) (quotations omitted). "Accordingly, when a defendant's alleged infringement commences before the copyright is registered, the plaintiff is barred from recovering statutory damages and attorney's fees for both the conduct occurring prior to the registration and any subsequent infringements occurring after the registration." *Id.* The plaintiff is still, however, "entitled to actual damages." *Engenium Sols., Inc. v. Symphonic Techs. Inc.*, 924 F. Supp. 2d 757, 790 (S.D. Tex. 2013) (citation omitted) ("It is well-settled that a party has the right to have a jury determine actual damages.").

Meanwhile, "[o]riginal, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345, 111 S. Ct. 1282, 1287, 113 L. Ed. 2d 358 (1991). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* (citation omitted). Indeed, "[o]riginality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.*

At the time of suit, Andra had submitted an "application, fee, and deposit" to the Copyright Office (Dkt. #13, Exhibit 2). *See Geoscan*, 226 at F.3d at 393. Accordingly, Andra satisfied the registration requirement for pleading a copyright infringement action under Fifth Circuit precedent. *Id.* Since it had only submitted its registration materials at the time it filed suit, Andra cannot recover attorney's fees or statutory damages for its Copyright Act claim.[5]

Meanwhile, Andra's pleadings demonstrate that the Tomima's Tip application was sufficiently original as an interactive, conduit for offering product information to consumers. The application's use of some unoriginal information does not subvert this fact, particularly given the "extremely low" bar for establishing originality in the content of copyrights. *Feist*, 499 U.S. at 345.

BareWeb's claim that Andra's First Amended Complaint did not put BareWeb on notice of how it was infringing Andra's copyright is also unpersuasive. Unlike the multiple plaintiffs in

---

[5] Per the First Amended Complaint, Andra first published Tomima's Tip on HerRoom in May 2006 (Dkt. #13 at p. 5). Andra submitted its copyright registration on November 20, 2017 (Dkt. #13, Exhibit 2 at p. 3). In turn, Andra's registration precludes the recovery of statutory damages and attorney's fees under the Copyright Act. *Leland*, 2007 WL 2900597, at *2.

*Guajardo*, on which BareWeb heavily relies, who sued multiple defendants whilst generally asserting infringement, Andra—a single plaintiff—sued BareWeb—a single defendant—with a clearly explained cause of action for copyright infringement, concerning specific intellectual property subject to copyright protection—the Tomima's Tip application. *Cf. Guajardo v. Freddie Records, Inc.*, No. CV H-10-2024, 2013 WL 12144152, at *7 (S.D. Tex. Apr. 9, 2013), report and recommendation adopted, No. CV H-10-2024, 2013 WL 12144073 (S.D. Tex. June 27, 2013)). In its First Amended Complaint, Andra even included a side-by-side graphical comparison of one Tomima's Tip and one amBRAssador Tip to show why it believed BareWeb was infringing on its copyright (Dkt. #13 at p. 2). In turn, the Court recognizes that Andra sufficiently pleaded that it owned intellectual property subject to protection under the Copyright Act, BareWeb infringed on its intellectual property by copying it, and, accordingly, Andra is entitled relief.

Having resolved BareWeb's arguments for dismissal, the Court finds that Andra pleaded plausible claims for relief, including its causes of action for breach of contract, infringement under the Copyright Act, and infringement under the Lanham Act.

## IV. Since Venue Lies in this District for Andra's Lawsuit, the Court Will Not Transfer the Case to the District of New Jersey, Newark Division

If a party files a lawsuit in an improper venue, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. As previously discussed, venue for this case lies in this district. *Supra* at 12–15. Thus, there is no need to transfer this case to the District of New Jersey, Newark Division.

## CONCLUSION

After reviewing the parties' briefing, the Court finds that Andra pleaded sufficient facts to establish personal jurisdiction, venue, and claims for relief against BareWeb. As venue is proper

in this district, the Court need not transfer this case to the District of New Jersey, Newark Division.

It is therefore **ORDERED** that Defendant BareWeb, Inc.'s 12(b)(2), 12(b)(3), and 12(b)(6)

Motions to Dismiss and in the Alternative Motion to Transfer Venue Pursuant to 28 U.S.C. § 1406

are hereby **DENIED**.

      **SIGNED this 11th day of June, 2018.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE